AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

**FILED**

for the

Western District of Oklahoma



OCT – 8 2019

CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY_____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH FACEBOOK USER ID
eric.schuster3 (#1285323501) THAT IS STORED AT
PREMISES CONTROLLED BY FACEBOOK INC.

)
)
)
)
)
)

Case No. M-19-553-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(d) | Sale or Transfer a Firearm to a Prohibited Person |
| 18 U.S.C. § 922(g)(8) | Possession of a Firearm by a Prohibited Person |
| 18 U.S.C. § 922(n) | Illegal Receipt of a Firearm by a Prohibited Person |

The application is based on these facts:

See attached Affidavit of Special Agent Lucas Keck, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which is incorporated and made a part hereof by reference.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lucas Keck, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **October 8, 2019**

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Suzanne Mitchell, U.S. Magistrate Judge
*Printed name and title*

AUSA: Matthew P. Anderson



IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID eric.schuster3 (#1285323501) THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Lucas Keck, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at the premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since 2015. I have completed the Criminal Investigator Training Program required by the ATF to be an ATF criminal investigator. I

also completed the Special Agent Basic Training Academy required by ATF for all

special agents employed by ATF. I have also completed Special Agent Basic Training for

the United States Secret Service in 2010. In connection with my official duties as an ATF

Special Agent, I investigate criminal violations of federal firearms laws, federal arson

laws, federal explosives laws and federal narcotics laws. I have been involved in multiple

investigations over my career that have resulted in the seizure of firearms, resulting in the

successful prosecution of the individuals involved. I have received training and have

experience including, but not limited to, the preparation and execution of firearm-related

search warrants and debriefing of informants and witnesses. I have been the affiant for

numerous state and federal search warrants.

      3.     I have conducted and participated in numerous investigations concerning

prohibited persons in possession of firearms.  As part of my training and experience, I

know that it is unlawful, based on 18 U.S.C. § 922(g)(8), for a person to possess a firearm

or ammunition that has moved in interstate commerce when such person is subject to a

court order that: (A) was issued after a hearing of which such person received actual

notice, and at which such person had an opportunity to participate; (B) restrains such

person from harassing, stalking, or threatening an intimate partner of such person or child

of such intimate partner or person, or engaging in other conduct that would place an

intimate partner in reasonable fear of bodily injury to the intimate partner or child; and

(C) by its terms explicitly prohibits the use, or attempted use, or threatened use of

physical force against such intimate partner or child that would reasonably be expected to

2

cause bodily injury. As part of my training and experience, I know that it is unlawful, based on 18 U.S.C. § 922(n), for anyone who is under indictment, to include an indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year, to receive any firearm or ammunition that has been shipped or transported in interstate commerce. I know that it is unlawful, based on 18 U.S.C. § 922(d), to sell or otherwise dispose of any firearm or ammunition to anyone, knowing or having reasonable cause to believe that such person falls into a category of prohibited persons, pursuant to 18 U.S.C. § 922(g)(1-9) or 18 U.S.C. § 922(n).

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, interviews, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of evidence in this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 922(d), 922(g)(8), and 922(n) have been committed by Barry Roland TITUS and Keegan Kelley HARROZ in the Western District of Oklahoma. Therefore, I believe there is probable cause to search the information described in Attachment A for evidence of these crimes and fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6.     On September 16, 2019, the Okmulgee County Violent Crimes Task Force ("VCTF") took possession of a firearm from the Sachse Police Department ("SPD") in Sachse, Texas on September 16, 2019. This firearm was given to the SPD by Jacoby Kelley on September 13, 2019. Mr. Kelley made statements in a 911 call and to SPD officers that were captured on body camera, that he was given the firearm to hold; it was not his firearm; and the firearm may have been used in a triple homicide in Oklahoma.

7.     While assisting the VCTF on this investigation, I examined the firearm given to law enforcement by Mr. Kelley and determined it is a Spike's Tactical, Model ST 15, multi caliber semi-automatic rifle, serial number NSL159529 (hereinafter, the "Firearm"). I requested an urgent trace of the Firearm to determine the original purchaser. On September 18, 2019, the trace was completed and showed that the Firearm was sold by Blue Collar Tactical, a Federal Firearms Licensee (FFL) in Oklahoma City, Oklahoma, to Eric Schuster on December 28, 2018.

8.     On September 20, 2019, I contacted Eric Schuster and was advised that he, Mr. Schuster, sold the Firearm to Barry TITUS and his girlfriend on August 4, 2019. The following day, I interviewed Mr. Schuster in person. Through investigative queries, I knew that Mr. Schuster worked at Innovative Cyclesports. During the interview, Mr. Schuster confirmed that he had worked there prior to relocating to Texas in the past four to six weeks. In addition, Mr. Schuster provided additional information about the day he met TITUS and his girlfriend.

4

9.      On September 21, 2019, Okmulgee County Sheriff's Office (OCSO) Investigator Aaron Swayze and I interviewed Mr. Schuster in reference to the Firearm. Mr. Schuster explained that he had known TITUS for several years through work, and had sold TITUS a vehicle in July 2018 that TITUS had recently paid off. Mr. Schuster told investigators that TITUS contacted him through Facebook Messenger and asked about buying a firearm in July or August 2019. On August 4, 2019, TITUS and a woman Mr. Schuster later recognized as Keegan HARROZ arrived at Mr. Schuster's residence in Cleveland County, Oklahoma. Mr. Schuster said that both TITUS and HARROZ handled the Firearm and test fired the Firearm with ammunition that Mr. Schuster provided. Mr. Schuster said that HARROZ then retrieved money from their vehicle to pay for the Firearm. Mr. Schuster showed investigators a receipt book where he prepared a receipt to TITUS for the Firearm, listing the name "Barry," as well as a description of the Firearm, serial number, and the sales price. I seized the receipt as evidence.

10.     During the course of the investigation, I reviewed court records on the Oklahoma State Courts Network (OSCN) website and noted that TITUS is currently subject to a Protective Order in Oklahoma County case number PO-2019-1400, filed on June 12, 2019. According to OSCN, TITUS is also currently charged with three felonies in Oklahoma County case number CF-2018-4664: (i) domestic abuse assault and battery, resulting in great bodily harm; (ii) domestic abuse by strangulation; and (iii) kidnapping. Based on my review of the court dockets, TITUS is represented by HARROZ in each case.

5

11.     On September 25, 2019, ATF Special Agent Jared Lowe obtained a certified copy of TITUS' protective order from the Oklahoma County Court Clerk.

12.     On September 27, 2019, I reviewed TITUS' protective order and observed an Order Continuing Emergency Protective Order in Full Force and Effect, which was filed in the Oklahoma County District Court on June 25, 2019. The order stated that there had been a hearing on June 25, 2019, in which TITUS appeared along with his lawyer, and that the Emergency Order of Protection, which had been entered on June 12, 2019, remained in full force and effect until December 6, 2019.

13.     I further reviewed the Emergency Order of Protection and noted that it expressly prohibited TITUS from having any contact with the Petitioner, including harassing, stalking, or threatening the Petitioner, and expressly prohibited the use, attempted use, or threatened use of physical force against the Petitioner.

14.     I reviewed the Petition for Protective Order, in which the Petitioner stated that she and TITUS had formerly lived in the same household and had previously been in a dating relationship.

15.     In addition, as a firearms NEXUS expert, I determined the Firearm recovered by the VCTF from SPD is a firearm; that it was not manufactured in the state of Oklahoma; and therefore, the Firearm traveled in interstate commerce to reach the state of Oklahoma.

6

16.     Based on the above facts, I believe that TITUS knew that he was subject to

a protective order issued against him, and knew that he was charged in Oklahoma County

District Court with crimes punishable by imprisonment for a term exceeding one year.

17.     Given his status, I believe TITUS violated 18 U.S.C. §§ 922(g)(8) and

922(n) when he received and took possession of the Firearm.  These violations occurred

in Cleveland County, in the Western District of Oklahoma, where TITUS received the

Firearm following its purchase from Mr. Schuster.

18.     Given her status as TITUS' counsel in both, the protective order case and

his pending felony case, I believe HARROZ knew that TITUS was prohibited from

possessing or receiving any firearms, and therefore violated 18 U.S.C. §§ 922(d)(1) and

(d)(8) when she paid for and handed the Firearm to TITUS.

19.     I utilized the Internet to search for the Facebook profile of Eric Schuster.  I

located Mr. Schuster's profile page on Facebook, listed under "eric.schuster3", with

Facebook ID #1285323501.  I believe this is the Facebook account used by Mr. Schuster

to communicate with TITUS from September 2018 when TITUS made a down payment

on a vehicle he purchased from Mr. Schuster.   Mr. Schuster stated the communications

began again in July 2019 when TITUS' first inquired about purchasing the Firearm.  For

the following reasons, I believe the Facebook account under "eric.schuster3" belongs to

Mr. Schuster. First, the profile photo on the Facebook account is that of Eric Schuster, the

same individual I met in person on September 21, 2019.  Second, the Facebook

mentioned his employment at Innovative Cyclesports.  Third, the profile information

7

listed him living in Newalla, Oklahoma. Newalla is located in Cleveland County where

Mr. Schuster was residing when I interviewed him. I also utilized the Internet to search

for the Facebook profile of TITUS. Based on the results of my search, I believe that

TITUS has deactivated or deleted his Facebook account. Although I cannot verify that

TITUS has/had a Facebook account, we are attempting to preserve any Facebook

evidence that may exist relating to TITUS' cell phone number.

20.     I believe probable cause exists to search Mr. Schuster's Facebook

account(s) to gather evidence regarding the illegal acquisition and disposition of a firearm

in violation of Title 18 United States Code §§ 922(d), 922(g)(8), and 922(n) by HARROZ

and TITUS.

## TECHNICAL INFORMATION ABOUT FACEBOOK

21.     Facebook owns and operates a free-access social networking website of the

same name that can be accessed at http://www.facebook.com. Facebook allows its users

to establish accounts with Facebook, and users can then use their accounts to share

written news, photographs, videos, and other information with other Facebook users, and

sometimes with the general public.

22.     Facebook asks users to provide basic contact and personal identifying

information to Facebook, either during the registration process or thereafter. This

information may include the user's full name, birth date, gender, contact e-mail

addresses, Facebook passwords, physical address (including city, state, and zip code),

8

telephone numbers, screen names, websites, and other personal identifiers.  Facebook

also assigns a user identification number to each account.

23.    Facebook users may join one or more groups or networks to connect and

interact with other users who are members of the same group or network.  Facebook

assigns a group identification number to each group.  A Facebook user can also connect

directly with individual Facebook users by sending each user a "Friend Request."  If the

recipient of a "Friend Request" accepts the request, then the two users will become

"Friends" for purposes of Facebook and can exchange communications or view

information about each other.  Each Facebook user's account includes a list of that user's

"Friends" and a "News Feed," which highlights information about the user's "Friends,"

such as profile changes, upcoming events, and birthdays.

24.    Facebook users can select different levels of privacy for the

communications and information associated with their Facebook accounts.  By adjusting

these privacy settings, a Facebook user can make information available only to himself or

herself, to particular Facebook users, or to anyone with access to the Internet, including

people who are not Facebook users.  A Facebook user can also create "lists" of Facebook

friends to facilitate the application of these privacy settings.  Facebook accounts also

include other account settings that users can adjust to control, for example, the types of

notifications they receive from Facebook.

25.    Facebook users can create profiles that include photographs, lists of

personal interests, and other information.  Facebook users can also post "status" updates

9

about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

26.     Facebook allows users to upload photos and videos, which may include any metadata such as the location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

27.     Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the

10

profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

28.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

29.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

30.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

31.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user, but cannot be viewed by people who visit the user's Facebook page.

32.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

33.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

34.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including date of inception), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and

12

the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its

services.  Geo-location allows, for example, users to "tag" their location in posts and
Facebook "friends" to locate each other.  This geographic and timeline information may
tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook
account activity may provide relevant insight into the Facebook account owner's state of
mind as it relates to the offense under investigation.  For example, information on the
Facebook account may indicate the owner's motive and intent to commit a crime (e.g.,
information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting
account information in an effort to conceal evidence from law enforcement).

37.     Therefore, the computers of Facebook are likely to contain all the material
described above, including stored electronic communications and information concerning
subscribers and their use of Facebook, such as account access information, transaction
information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38.     I anticipate executing this warrant under the Electronic Communications
Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by
using the warrant to require Facebook to disclose to the government copies of the records
and other information (including the content of communications) particularly described in
Section I of Attachment B.  Upon receipt of the information described in Section I of
Attachment B, government-authorized persons will review that information to locate the
items described in Section II of Attachment B.

14

## CONCLUSION

39.     Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant in the daytime.

40.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(c)(A)(i).

41.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

42.     I further request that the Court order that all papers in support of this application, including this affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good

43.     cause to seal these documents because their premature disclosure may

seriously jeopardize that investigation.



Respectfully submitted,

Lucas Keck
Special Agent (ATF)


Subscribed and sworn to before me on this $8^{?}$ day of October, 2019

HONORABLE JUDGE SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF OKLAHOMA

16

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook user ID eric.schuster3 (#1285323501) that is stored at the premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

17

## ATTACHMENT B

### Items to Be Seized

**I.   Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, pictures, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information, including for eric.schuster3 (#1285323501): full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities from June 1, 2019 to September 30, 2019;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with the photos and videos;

(d)     All profile information; News Feed information; status updates; links to

videos, photographs, articles, and other items; Notes; Wall postings; friend

lists, including the friends' Facebook user identification numbers; groups

and networks of which the user is a member, including the groups'

Facebook group identification numbers; future and past event postings;

rejected "Friend" requests; comments; gifts; pokes; tags; and information

about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the

user, including all private messages, chat history, video calling history, and

pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the

account;

(h)     All records of the account's usage of the "Like" feature, including all

Facebook posts and all non-Facebook webpages and content that the user

has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan"

of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the accounts from June 1,

2019, to September 30, 2019;

2

(l)     All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is ordered to disclose the above information to the government within 14 days of service of this warrant

## II.    Information to be seized by the government

1.    All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C. §§ 922(d), 922(g)(8), or 922(n) for the user ID identified on Attachment A, including information pertaining to the following matters:

(a) Evidence, including Facebook messages with other Facebook users, about matters relating to the sale of a firearm to Barry TITUS or Keegan HARROZ, including any messages expressing an interest to purchase a

3

firearm, any messages negotiating a price, any messages disclosing any

firearms available for sale, or any messages discussing the facts of the sale;

(b) Evidence indicating how and when the Facebook account was accessed or

used, to determine the chronological and geographic context of account

access, use, and events relating to the crime under investigation, the

Facebook account owner, and/or TITUS and HARROZ; and

(c) The identity of the person(s), including full name and user identification

number, who communicated with the user ID about matters relating to

obtaining or disposing of a firearm or ammunition in violation of 18 U.S.C.

§§ 922(d), 922(g)(8), and 922(n).

4